Samuel A. Schwartz, Esq.
Nevada Bar No. 10985
Nikoll Nikci, Esq.
Nevada Bar No. 10699
The Schwartz Law Firm, Inc.
626 South Third Street
Las Vegas, Nevada 89101
Telephone: (702) 385-5544
Facsimile: (702) 385-2741
Attorneys for Debtor

**UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| In re: | ) |
| | ) Case No.: 08-23264-BAM |
| Joy Pimentel, | ) |
| | ) Hearing Date:      July 28, 2009 |
| Debtor. | ) Time of Hearing:  3:00 p.m. |
| | ) |

**DEBTOR'S MEMORANDUM OF LAW IN SUPPORT OF
CONFIRMATION OF THE PLAN OF REORGANIZATION UNDER CHAPTER
<u>11 OF THE BANKRUPTCY CODE AND OMINUBS REPLY TO OBJECTIONS</u>**

**PRELIMINARY STATEMENT**

True to the most fundamental bankruptcy principles, this chapter 11 case was commenced with the goal of maximizing estate value for the benefit of all parties in interest. The Debtor, however, faced extremely long odds against ever achieving such an ambitious goal - her case was filed and was commenced against a backdrop of recent and numerous real estate failures, the persisting economic downturn, and the continued contraction of available capital markets. Amidst this landscape of real estate carnage, the Debtor remarkably is poised to beat the odds and successfully emerge from chapter 11. Approximately 8 months after commencing

this case, the Debtor is now before the Court seeking confirmation of her chapter 11 plan (as may be modified or amended, the "**Plan**").[1]

As set forth herein, provided the Debtor can resolve the 2 objections of her primary lenders, the Plan will satisfy her obligations to her creditors in a fair and equitable manner, will satisfy all applicable provisions of the Bankruptcy Code, and should be confirmed. Accordingly, the Debtor respectfully requests that the Court enter an order confirming the Plan.

## I I
## FACTS

The pertinent facts are set forth in (i) the Disclosure Statement, (ii) the Plan, (iii) the affidavits in support of confirmation of the Plan that will be filed with the Court prior to the Confirmation hearing, and (iv) the testimony and other evidence that will be presented at the Confirmation hearing. Such facts are incorporated here as if fully set forth herein. Salient facts will be referred to in connection with the discussion of applicable legal principles.

## III
## ARGUMENT
### A.    THE PLAN SATISFIES THE CONDITIONS TO CONFIRMATION ENUMERATED BY SECTION 1129 OF THE BANKRUPTCY CODE

To obtain confirmation of the Plan, the Debtors must demonstrate that the Plan satisfies the provisions of section 1129(a) of the Bankruptcy Code by a preponderance of the evidence. See In re Monarch Beach Venture, Ltd., 166 B.R. 428, 432 (Bankr. S.D.Cal. 1993) quoting Heartland Fed. Say. & Loan Ass'n v. Briscoe Enters. Ltd., II (In re Briscoe Enters., Ltd., II), 994 F.2d 1160, 1165 (5th Cir. 1993) (holding that "preponderance of the evidence is the debtor's appropriate standard of proof under both § 1129(a) and in a cramdown")(citation omitted); 7

---

[1] Capitalized terms not defined herein shall have those meanings ascribed to them in the Plan.

<u>Collier on Bankruptcy</u> ¶ 1129.02[4], at 1129-22 (15th ed. 1997) ("[T]he proponent bears the burden of both introduction of evidence and persuasion that each subsection of section 1129(a) has been satisfied."). The Debtor will demonstrate that all the subsections of section 1129 of the Bankruptcy Code have been satisfied (or soon will be) with respect to the Plan by a preponderance of the evidence at the Confirmation Hearing.

### 1.    Section 1129(a)(1) is Satisfied Because the Plan Complies with all Applicable Provisions of the Bankruptcy Code

Pursuant to section 1129(a)(1) of the Bankruptcy Code, a plan must "compl[y] with the applicable provisions of [the Bankruptcy Code]." The legislative history of section 1129(a)(1) explains that this provision encompasses the requirements of sections 1122 and 1123 of the Bankruptcy Code governing classification of claims and contents of a plan. H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 412 (1977); S. Rep. No. 989, 95th Cong., 2d Sess. 126 (1978), and decisions in that regard concur. <u>See</u> <u>In re Cardsystems Solutions, Inc.</u>, 2007 WL 4166184, *8 – 9 (Bankr. Ariz. 2007); <u>See</u> <u>also</u> <u>In re Johns-Manville Corp.</u>, 68 B.R. 618, 629 (Bankr. S.D.N.Y. 1986), <u>aff'd in part</u>, <u>rev'd in part</u>, 78 B.R. 407 (S.D.N.Y. 1987), <u>aff'd sub nom</u>; <u>Kane v. Johns-Manville Corp.</u>, 843 F.2d 636 (2d Cir. 1988); <u>In re Toy & Sports Warehouse Inc.</u>, 37 B.R. 141, 149 (Bankr. S.D.N.Y. 1984).  As demonstrated below, the Plan complies with the requirements of both sections 1122 and 1123.

### (a)    The Plan Complies With Section 1122 of the Bankruptcy Code

Section 1122(a) of the Bankruptcy Code authorizes multiple classes of claims or interests as long as each claim or interest within a class is substantially similar to other claims or interests in that class. 11 U.S.C. § 1122. Under section 1122(a), the relevant inquiry is whether all claims of a class have substantially similar legal rights with respect to the debtor's assets. A plan

proponent is afforded significant flexibility in classifying claims under section 1122(a) if there is a reasonable basis for the classification and if all claims within a particular class are substantially similar. See In re Elmwood, Inc., 182 B.R. 845, 849 (D. Nev. 1995) citing In re Montclair Retail Center, 177 B.R. 663, 665 (B.A.P. 9th Cir. 1995); see also In re Jersey City Medical Center, 817 F.2d 1055 (3d Cir. 1987); In re U.S. Truck Co., Inc., 800 F.2d 581, 586 (6th Cir. 1986); In re LeBlanc, 622 F.2d 872, 879 (5th Cir.), reh'g denied, 627 F.2d 239 (5th Cir. 1980).

Other than Administrative Claims and Priority Tax Claims, which are not classified and are separately treated, Claims are divided into 6 Classes.  Class 1 is comprised of the Debtor's secured lenders' first lien claims and is unimpaired.  Class 2 is comprised of the unsecured portion of the Debtor's secured first lien claims which were separated, or bifurcated, based on the property values of the Debtor's residences, and is entitled to vote.  Class 3 is comprised of all second lien holders' claims that were stripped off during the case and is entitled to vote.  Class 4 is comprised of priority unsecured claims and it is anticipated those claims, if any, will be paid in full. Class 5 is comprised of convenience Claims pursuant to Section 1122(b) of the Bankruptcy Code and are paid in full. Last, Class 6 is comprised of all General Unsecured Claims, and is entitled to vote on the Plan.  The classification is based upon differences in legal nature and/or priority of the claims against the Debtor's estate. Moreover, each of the claims in each particular class is substantially similar to the other Claims in such class.  Accordingly, the classification of Claims in the Plan complies with section 1122 of the Bankruptcy Code.

(b)    <strong>The Plan Complies With Section 1123(a) of the Bankruptcy Code</strong>

Section 1123(a) of the Bankruptcy Code sets forth seven requirements with which every

chapter 11 plan must comply. 11 U.S.C. § 1123(a). As described below, the Plan complies fully with each such requirement:

· Article II of the Plan designates the classification of Claims into classes which contain only Claims that are substantially similar to each other as required by section 1123(a)(1);

· Article II of the Plan designates (but does not classify) Claims of the type described in sections 507(a)(1) (administrative expense claims) and 507(a)(8) (priority tax claims). Because these chapter 11 cases were commenced voluntarily, there are no claims of the kind specified in section 507(a)(2) (claims arising during the "gap" period in an involuntary case);

· Article II of the Plan identifies whether each Class of Claims is impaired or not impaired under the Plan as required by section 1123(a)(2);

· Article II of the Plan sets forth the treatment of each of the impaired Claims as required by Section 1123(a)(3);

· Article II of the Plan provides that, unless the holder of a particular claim has agreed to a less favorable treatment, the treatment of each Claim in each particular Class is the same as the treatment of each other Claim in such Class as required by section 1123(a)(4); and

· Article V of the Plan sets forth the means for implementation of the Plan as required by section 1123(a)(5).

**(c) The Plan Complies With Section 1123(b) of the Bankruptcy Code**

Section 1123(b) sets forth the permissive provisions that may be incorporated into a chapter 11 plan. In accordance with section 1123(b), the Plan and the transactions contemplated therein represent an effort to compromise between and among the Debtor and each of her primary creditor constituencies.   Such a compromise is explicitly contemplated by section 1123(b)(3)(A) of the Bankruptcy Code which states that a chapter 11 plan may provide for "the settlement or adjustment of any claim or interest belonging to the debtor or to the estate." 11 U.S.C. § 1123(b)(3). The standards for approval of settlements are well established and require a court to inquire into the reasonableness of the proposed settlement.  See, e.g., In re Washington Public Power Supply System Securities Litigation, 720 F.Supp. 1379, 1387 (D. Ariz. 1989); see

also <u>Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson</u>, 390 U.S. 414, 424 reh'g denied, 391 U.S. 909 (1968); <u>In re W.T. Grant Co.</u>, 699 F.2d 599, 608 (2d Cir.), cert. denied, 464 U.S. 822 (1983); <u>Florida Trailer & Equip. Co. v. Deal</u>, 284 F.2d 567, 571 (5th Cir. 1960). The inquiry is whether the settlement falls below "the lowest point in the range of reasonableness." <u>In re Milden</u>, 111 F.3d 138, *3 (9th Cir. 1997) <u>quoting</u> <u>In re Hydronic Enterprise, Inc.</u>, 58 B.R. 363, 366 (Bankr. D. R.I. 1986); <u>see also</u> <u>In re Teltronics Servs., Inc.</u>, 762 F.2d 185, 189 (2d Cir. 1985); <u>In re W.T. Grant Co.</u>, 699 F.2d at 608. It is the Debtor's belief that the compromises she anticipates making to gain the approval of her secured creditors in this case are well above the lowest point in the range of reasonableness and should be approved by the Court.

Similarly, the Debtor's assumption and rejection of executory contracts (primarily her residential leases) under the Plan is authorized by and appropriate under section 1123(b)(2). Section 1123(b)(2) provides that a plan may "subject to section 365 of this title, provide for the assumption, rejection, or assignment of any executory contract or unexpired lease of the debtor not previously rejected under such section." 11 U.S.C. § 1123(b)(2). Pursuant to section 365 of the Bankruptcy Code, a debtor may assume an executory contract or unexpired lease if: (i) outstanding defaults on the contract or lease have been cured pursuant to section 365(b)(1) of the Bankruptcy Code, and (ii) the debtor's decision to assume such executory contract or unexpired lease is supported by valid business justifications.[2] <u>See</u> <u>In re Peaches Records and Tapes, Inc.</u>, 51

---

[2]        Section 365 of the Bankruptcy Code provides, in pertinent part, as follows:

(a)        Except as provided in sections 765 and 766 of this title and in subsections (b), (c), and (d) of this section, the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor.

B.R. 583, 587 (B.A.P. 9th Cir. 1985); see also Medical Malpractice Ins. Ass'n v. Hirsch (In re Lavigne), 114 F.3d 379, 386 (2d Cir. 1997); Control Data Corp. v. Zelman (In re Minges), 602 F.2d 38, 42 (2d Cir. 1979); see also NLRB v. Bildisco & Bildisco, 465 U.S. 513, 523 (1984) (describing business judgment test as "traditional"); In re Child World, Inc., 142 B.R. 87, 89 (Bankr. S.D.N.Y. 1992).

Further, a debtor in possession may assign an executory contract or unexpired lease, after such contract or lease has been assumed, even if such contract or lease contains a provision prohibiting assignment. 11 U.S.C. § 365(f). See In re David Orgell, Inc., 117 B.R. 574, 575 - 576 (Bankr. C.D. Cal. 1990); see also In re UL Radio Corp., 19 B.R. 537, 542 (Bankr. S.D.N.Y. 1982).

Here, the Plan constitutes (i) a motion by the Debtor to assume each of her executor contracts or unexpired leases that were not rejected or that are not being rejected, either pursuant to the Plan or by separate motion (see Plan § 4.01), and (ii) a motion to reject each executory contract or expired lease not listed on Exhibit 2 to the Plan. The Debtor has carefully reviewed each of her executory contracts and unexpired leases and have determined that their assumption, assumption and assignment, or rejection as provided by the Plan is beneficial to the Debtor and

---

(b)(1)  If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of the assumption of such contract or lease, the trustee –

(A)    cures, or provides adequate assurance that the trustee will promptly cure such default;

(B)    compensates, or provides adequate assurance that the trustee will promptly compensate, or party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and

(C) provides adequate assurance of future performance under such contract or lease.

11 U.S.C. §§ 365(a), (b)(1).

her creditors and is supported by valid business justifications. Accordingly, the Debtor submits that the proposed assumption, assignment, and rejection of executory contracts and unexpired leases under the Plan satisfies the requirement of section 365 of the Bankruptcy Code. Further, the Plan provides that all timely filed claims for amounts owed pursuant to section 365(b)(1) of the Bankruptcy Code as a consequence of a Debtor's assumption or assignment of an executory contract or unexpired lease ("**Cure Payment**") shall be treated as Administrative Claims and also provides an appropriate mechanism for the filing, resolution, and treatment of claims for rejection damages. See Plan § 5.01.

Based upon the foregoing, the Plan complies fully with the requirements of sections 1122 and 1123 of the Bankruptcy Code and, thus, satisfies the requirements of section 1129(a)(1) of the Bankruptcy Code.

### 2.    Section 1129(a)(2) is Satisfied Because the Debtor Complied With all Applicable Provisions of the Bankruptcy Code

Section 1129(a)(2) of the Bankruptcy Code requires that the plan proponent "compl[y] with the applicable provisions of [the Bankruptcy Code]." 11 U.S.C. § 1129(a)(2). The legislative history to section 1129(a)(2) reflects that this provision is intended to encompass the disclosure and solicitation requirements under sections 1125 and 1126 of the Bankruptcy Code. See H.R. Rep. No. 95-595, at 412 (1977); S. Rep. No. 95-989, at 126 (1978) (''Paragraph (2) [of § 1129(a)] requires that the proponent of the plan comply with the applicable provisions of chapter 11, such as section 1125 regarding disclosure''); see also In re Sierra-Cal, 210 B.R. 168, 176 (Bankr. E.D. Cal. 1997); In re Resorts Int'l, Inc., 145 B.R. 412, 468 (Bankr. D.N.J. 1990); In re Elsinore Shore Assocs., 91 B.R. 238, 258 (Bankr. B.R. D.N.J. 1988); In re River Village Assocs., 161 B.R. 127, 140 (Bankr. E.D. Pa. 1993), aff'd, 181 B.R. 795 (E.D. Pa. 1995); In re

Johns-Manville Corp., 68 B.R. 618, 630 (Bankr. S.D.N.Y. 1986), aff'd in part, rev'd in part on other grounds, 78 B.R. 407 (S.D.N.Y. 1987), aff'd sub nom; Kane  v. Johns-Manville Corp., 843 F.2d 636 (2d Cir. 1988); In re Toy & Sports Warehouse, Inc., 37 B.R. at 149.

       The Debtor complied with the applicable provisions of title 11, including the provisions of section 1125 and 1126, regarding disclosure and plan solicitation. By order, dated June 16, 2009 (the "**Approval and Procedures Order**"), the Bankruptcy Court approved the Disclosure Statement pursuant to section 1125(b) of the Bankruptcy Code as containing "adequate information" of a kind and in sufficient detail to enable hypothetical, reasonable investors typical of the Debtors' creditors and equity interest holders to make an informed judgment whether to accept or reject the Plan. In addition, each holder of a Claim received the solicitation materials required by the Approval and Procedures Order, including, for holders of Claims entitled to vote, the Disclosure Statement (which includes as an exhibit a copy of the Plan), and a ballot. The Solicitation Package was transmitted in connection with the solicitation of votes to accept the Plan in compliance with section 1125 of the Bankruptcy Code. 11 U.S.C. § 1125(b), (c). The Debtors did not solicit acceptance of the Plan by any creditor or equity interest holder prior to the transmission of the Disclosure Statement. See In re California Fidelity, Inc., 198 B.R. 567, 571 (B.A.P. 9th Cir. 1996); In re Trans Max Technologies, Inc., 349 B.R. 80, 86 (Bankr. D. Nev. 2006); see also Trans World Airlines, Inc. v. Texaco Inc. ("In re Texaco Inc."), 81 B.R. 813, 816 (Bankr. S.D.N.Y. 1988) ("Section 1125(b) relates to the voting process with respect to filed plans.").

       Section 1126 of the Bankruptcy Code specifies the requirements for acceptance of the Plan. Under section 1126, only holders of allowed Claims in impaired Classes of Claims that will

receive or retain property under the Plan on account of such Claims may vote to accept or reject the Plan. As set forth in the Disclosure Statement, in accordance with section 1126 of the Bankruptcy Code, the Debtors solicited acceptances of the Plan from the holders of all allowed claims in each Class of Impaired Claims that is to receive distributions under the Plan.

The impaired Classes entitled to vote under the Plan are Classes 2, 3 and 6. The Plan reflects that Classes 1, 4 and 5 are unimpaired and, thus, are conclusively presumed to have accepted the Plan. Based upon the foregoing, and the affidavits of service filed by the Debtors' counsel, the Debtor complied with the Court's Approval and Procedures Order, applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Court Rules of the District of Nevada. The requirements of section 1129(a)(2) are satisfied. See Trans Max Technologies, 349 B.R. 80; see also In re Sound Radio, Inc., 93 B.R. 849, 852-53 (Bankr. D.N.J. 1988), aff'd in part and remanded in part, 103 B.R. 521 (D.N.J. 1989), aff'd, 908 F.2d 964 (3d Cir. 1990).

### 3.    Section 1129(a)(3) is Satisfied Because the Plan has been Proposed in Good Faith and not by any Means Forbidden by Law

Section 1129(a)(3) of the Bankruptcy Code requires that a plan be "proposed in good faith and not by any means forbidden by law."  The Ninth Circuit has stated that the good faith standard requires, beyond "[h]onesty and good intentions," that there is "some prospect that the affairs can be reorganized" effectively.  In re BBT, 11 B.R. 224, 235 (Bankr. D. Nev. 1981)(citations omitted); see also Glessing v. Koelbl (In re Koelbl), 751 F.2d 137, 139 (2d Cir. 1984)(quoting Manati Sugar Co. v. Mock, 75 F.2d 284, 285 (2d Cir. 1935)); see also Kane v. Johns-Manville Corp., 843 F.2d 636, 649 (2d Cir. 1988)  Generally, a chapter 11 plan is filed in good faith if the plan proponent has exhibited "a fundamental fairness in dealing with [the]

creditors" and if the plan "will achieve a result consistent with the objectives and purposes of the Code." In re Jorgensen, 66 B.R. 104, 109 (Bankr. 9th Cir. 1986) (a chapter 11 plan is filed in good faith if the plan proponent has exhibited "a fundamental fairness in dealing with [the] creditors" and if the plan "will achieve a result consistent with the objectives and purposes of the Code"); see also In re Texaco, Inc., 84 B.R. 893, 907 (Bankr. S.D.N.Y.) appeal dismissed, 92 B.R. 38 (S.D.N.Y. 1988) (a plan is proposed in good faith "if there is a likelihood that the plan will achieve a result consistent with the standards prescribed under the code") (citing Hanson v. First Bank of South Dakota, 828 F.2d 1310, 1315 (8th Cir. 1987) (quoting In re Toy & Sports Warehouse, Inc., 37 B.R. at 149)). See In re Cellular Information Systems, Inc., 171 B.R. 926, 945 (Bankr. S.D.N.Y. 1994). See also Connell v. Costal Cable T.V., Inc., 709 F.2d 762, 764 (1st Cir. 1983) ("[A] chapter 11 reorganization plan must be submitted in good faith. That is to say, there must be some relation – at least an arguable relation – between the chapter 11 plan and the reorganization-related purposes that the chapter was designed to serve").

Congress has recognized that the continuation of the operation of a debtor's business as a viable entity benefits the national economy through the preservation of jobs and continued production of goods and services and thus, the primary goal of chapter 11 of the Bankruptcy Code is to promote the restructuring of a troubled entity. NLRB v. Bildisco & Bildisco, 465 U.S. 513, 528 (1984)("[The] fundamental purpose of reorganization is to prevent a debtor from going into liquidation, with an attendant loss of jobs and possible misuse of economic resources."); see also In re Nite Lite Inns, 17 B.R. 367, 370 (Bankr. Cal. 1982).

Here, the Debtor's chapter 11 case was prosecuted and the Plan was proposed with these goals in mind. Pursuant to the Plan, the Debtor will effect a restructuring of her balance sheet

that will eliminate future debt service on approximately $1 million of existing obligations, materially reducing her secured indebtedness, and allow for her to continue maintaining 8 residential properties at a time when many homes and communities are being ravaged by the foreclosure crisis going on across the country.  The combined result will allow for the Debtor to maximize recoveries to all creditors by maximizing the value of the Debtor's primary assets.

**4.      Section 1129(a)(4) is Satisfied Because the Plan Provides for Court Approval of Payments Made by the Debtors for Services or Costs and Expenses**

Section 1129(a)(4) of the Bankruptcy Code requires that certain professional fees and expenses paid by the plan proponent, by the debtor, or by a person receiving distributions of property under the plan, be subject to approval by the Court as reasonable. 11 U.S.C. § 1129(a)(4). Section 1129(a)(4) has been construed to require that all payments of professional fees that are made from estate assets be subject to review and approval as to their reasonableness by the Court. See In re First Mangus Financial Corp., 2008 WL 450447, *4 (Bankr. D. Ariz.); see also In re Johns-Manville Corp., 68 B.R. at 632; 7 Collier on Bankruptcy ¶ 1129.03[4], at 1129-38 (15th ed. 1999).  In the instant case, no payment for services or costs in connection with the chapter 11 cases or the Plan has been made by any party other than payments that have been authorized by order of the Court.  Thus, the Plan complies with the requirement of section 1129(a)(4) of the Bankruptcy Code.

**5.      Sections 1129(a)(5), (a)(6), (a)(13), (a)(14) and (a)(16) are Satisfied Because they are Not Applicable In This Case**

Section 1129(a)(5) of the Bankruptcy Code requires that (i) the plan proponent disclose the identity and affiliations of the proposed officers and directors of the reorganized debtor, (ii) the appointment or continuance of such officers and directors be consistent with the interests of

creditors and equity security holders and with public policy, and (iii) there be disclosure of the identity and compensation of any insiders to be retained or employed by the reorganized debtors. 11 U.S.C. § 1129(a)(5).

Section 1129(a)(6) of the Bankruptcy Code requires that any regulatory commission having jurisdiction over the rates charged by the reorganized debtor in the operation of its businesses approve any rate change provided for in the plan. 11 U.S.C. § 1129(a)(6).

Section 1129(a)(13) requires that the debtor continue retiree benefits, for which the Debtor has none.  11 U.S.C. § 1129(a)(13).

Section 1129(a)(14) requires that the debtor continue domestic support obligations, for which the Debtor also has none.  11 U.S.C. § 1129(a)(14).

Section 1129(a)(16) relates to corporations and trusts, however, the Debtor is an individual, therefore, this section does not apply in this case.  11 U.S.C. § 1129(a)(16).

Accordingly, the Debtor (i) is not a corporation, (ii) does not charge any rates needing approval of a regulatory commission, (iii) has no retiree benefits and (iv) owes no domestic support obligations.  Therefore, Sections 1129(a)(5), (a)(6), (a)(13), (a)(14) and (a)(16) are satisfied here.

**7.      Section 1129(a)(7) is Satisfied Because the Plan is in the Best Interests of all of the Debtor's Creditors**

Section 1129(a)(7) of the Bankruptcy Code requires that a plan be in the best interests of creditors and stockholders. Specifically, section 1129(a)(7) provides in pertinent part:

With respect to each impaired class of claims or interests—

(A) each holder of a claim or interest of such class—
          (i) has accepted the plan; or

(ii) will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of this title on such date . . . .

11 U.S.C. § 1129(a)(7).

As section 1129(a)(7) makes clear, the best interests test applies only to non-accepting holders of impaired claims or equity interests. The best interests test focuses on individual dissenting parties rather than classes. See Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 No. LaSalle St. P'ship, 526 U.S. 434, 441 n.13 (1999). The test requires the plan proponent to demonstrate that, within each class, any dissenting claim holder or interest holder would receive under the chapter 11 plan not less than the amount such holder would receive in a chapter 7 liquidation. Id. See also In re M. Long Arabians, 103 B.R. 211, 216 – 217 (B.A.P. 9th Cir. 1989); United States v. Reorganized CF&I Fabricators of Utah, Inc., 518 U.S. 213, 228 (1996); In re Crowthers McCall Pattern, Inc., 120 B.R. 279, 297 (Bankr. S.D.N.Y. 1990); In re Northeast Dairy Coop. Fed'n Inc., 73 B.R. 239, 253 (Bankr. N.D.N.Y. 1987).

In the instant case, the best interests test is satisfied as to each impaired Claim. As described in the Liquidation Analysis, attached as **Exhibit D** to the Disclosure Statement, a chapter 7 liquidation of the Debtor's estate would result in zero distribution to all creditors except for the Debtor's first lien holders. Under the Plan, however, not one class fails to receive a distribution.  Accordingly, confirmation of the Plan will provide each rejecting creditor with a recovery that is not less than such holder would receive in a chapter 7 liquidation.

**8.     Although Section 1129(a)(8) has not been Satisfied because Classes 2 and 3 have Rejected the Plan, the Plan Should be Confirmed Because it Satisfies the Requirements of Section 1129(b)**

Section 1129(a)(8) of the Bankruptcy Code requires that each class of impaired claims or interests accepts the plan or is not impaired under the plan. 11 U.S.C. § 1129(a)(8).   Thus, because Classes 2 and 3 rejected the Plan, section 1129(a)(8) has not been satisfied. Nevertheless, although the Debtor is hopeful the objections to the Plan will be resolved on or before confirmation, pursuant to section 1129(b), the Plan may still be confirmed because section 1129(a)(8) is the only 1129(a) element not satisfied. 11 U.S.C. § 1129(b). More specifically, section 1129(b) provides in pertinent part that:

> [n]otwithstanding section 510(a) of [the Bankruptcy Code], if all of the applicable requirements of [section 1129(a)] other than [section 1129(a)(8)] are met with respect to a plan, the court, on request of the proponent of the plan, shall confirm the plan notwithstanding the requirements of such paragraph *if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan*.

11 U.S.C. § 1129(b)(1) (emphasis added).

Thus, under section 1129(b), the Court may "cram down" a plan over the dissenting vote of an impaired class or classes of claims or equity interests as long as the plan does not "discriminate unfairly" and is "fair and equitable" with respect to the dissenting class or classes. The plan proponent bears the burden of proof by a preponderance of the evidence.   In re Melcher, 329 B.R. 865, 873 (Bankr. N.D. Cal. 2005); see also Heartland Fed. Sav. & Loan Ass. Enters v. Briscoe Enters., Ltd., II (In re Briscoe Enters., Ltd., II), 994 F.2d 1160, 1163-64 (5th Cir. 1993).

### (a) The Plan Does not Unfairly Discriminate

Section 1129(b)(1) does not prohibit discrimination among classes. It prohibits only discrimination that is "unfair." In re Corcoran Hosp. Dist., 233 B.R. 449, 455 (Bankr. E.D. Cal. 1999); see also In re 11, 111, Inc., 117 B.R. 471, 478 (Bankr. D. Minn. 1990). The weight of judicial authority holds that a plan unfairly discriminates in violation of section 1129(b) of the Bankruptcy Code only if classes comprising similarly situated claims or interests receive treatment under the plan that is not equivalent and there is no reasonable basis for the disparate treatment. See In re Tucson Self-Storage, Inc., 166 B.R. 892, (B.A.P. 9th Cir. 1994); In re Kennedy, 158 B.R. 589, 599 (Bankr. D.N.J. 1993); In re Resorts Int'l, Inc., 145 B.R.at 481; In re Buttonwood Partners, Ltd., 111 B.R. 57, 63 (Bankr. S.D.N.Y. 1990); In re Future Energy Corp., 83 B.R. 470, 493 (Bankr. S.D. Ohio 1988); In re Johns-Manville Corp., 68 B.R. at 636. Accordingly, as between two classes of claims, there is no unfair discrimination if the classes are comprised of dissimilar claims or interests. See, e.g., In re Eitemiller, 149 B.R. 626, 630 (Bankr. D. Idaho 1993); In re Gallipo, 282 B.R. 917, 920 (Bankr. E.D. Wash. 2002). In re Johns-Manville Corp., 68 B.R. at 636. In the instant case, because each Class of Claims is of a different legal nature and priority, there is no unfair discrimination between such Classes.

### (b) The Plan is Fair and Equitable

Pursuant to section 1129(b) of the Bankruptcy Code, a plan is "fair and equitable" with respect to a rejecting class of unsecured claims or a class of interests if no claim or interest that is junior to such rejecting class will receive or retain any property under the plan on account of such junior claim or interest. See 11 U.S.C. §§ 1129(b)(2)(B)(ii) and 1129(b)(2)(C)(ii). Here, Classes 2 and 3 rejected the Plan because of the valuation of their assets and allegations that the

Plan may not be feasible. The Plan is nevertheless fair and equitable with respect to these rejecting Classes. No junior Class of Claims will receive any distribution under the Plan and holders of the more senior Claims are not being paid more under the Plan than their allowed claims. Accordingly, the requirements of section 1129(b)(2)(B) are satisfied and the Plan can be confirmed notwithstanding the failure to satisfy Section 1129(a)(8).

**9.      Section 1129(a)(9) is Satisfied Because the Plan Provides for Payment in Full of all Allowed Administrative And Priority Claims**

Section 1129(a)(9) of the Bankruptcy Code requires that persons holding claims entitled to priority under section 507(a) receive specified cash payments under the plan unless the holder of such a claim agrees to a different treatment. 11 U.S.C. § 1129(a)(9). Pursuant to Section 3.02 of the Plan, and in accordance with sections 1129(a)(9)(A) and (B) of the Bankruptcy Code, the Plan provides that each holder of an Allowed Administrative Claim will be paid in cash either on the confirmation date, in the ordinary course of business, or as may be otherwise agreed. Pursuant to Sections 3.03 and 3.04 of the Plan, and in accordance with section 1129(a)(9)(B), the Plan provides that all of the legal, equitable, and contractual rights of each holder of an allowed administrative claim and an allowed tax claim shall be paid. Based upon the foregoing, the Plan satisfies the requirements of section 1129(a)(9) of the Bankruptcy Code.

**10.      Section 1129(a)(10) May Be Satisfied Because The Debtor Believes At Least one Class of Impaired Claims has Accepted the Plan**

Section 1129(a)(10) of the Bankruptcy Code requires the affirmative acceptance of the Plan by at least one Class of impaired claims, "determined without including any acceptance of the plan by any insider." The Debtor is negotiating with her impaired creditors and believes that the Plan will satisfy this requirement in that at least one Class of impaired claims will accept the

Plan on or prior to confirmation, without including the acceptance of the Plan by insiders, if any, in such Classes.

### 11.    Section 1129(a)(11) is Satisfied Because the Plan is not Likely to be Followed by Liquidation or the Need for Further Financial Reorganization

Section 1129(a)(11) of the Bankruptcy Code requires that the Court determine that the Plan is feasible as a condition precedent to confirmation. The feasibility test set forth in section 1129(a)(11) requires the Court to determine whether the Plan is workable and has a reasonable likelihood of success. See United States v. Energy Resources Co., 495 U.S. 545, 549 (1990); In re Sagewood Manor Associates Ltd. Partnership, 223 B.R. 756, 762 (Bankr. D. Nev. 1998); Internal Revenue Serv. v. Kaplan, 104 F.3d 589, 597 (3d Cir. 1997).  The key element of feasibility is whether there exists a reasonable probability that the provisions of the plan can be performed.  See Trans Max Technologies, 349 B.R. at 95; see also In re Clarkson, 767 F.2d 417,420 (8th Cir. 1985) ("The test is whether the things which are to be done after confirmation can be done as a practical matter. . . .") (citation omitted).  The purpose of the feasibility test is to protect against visionary or speculative plans, "which promise creditors and equity security holders more under a proposed plan than the debtor can possibly attain after confirmation." Pizza of Haw., Inc. v. Shakey's, Inc., 761 F.2d 1374, 1382 (9th Cir. 1985) (citing 5 Collier on Bankruptcy ¶ 1129.02, at 1129-36.11 (15th ed. 1984)).  For purposes of determining whether the Plan satisfies the feasibility standard, the Debtor analyzed her ability to fulfill her obligations under the Plan. This analysis was simple; based on the reduced mortgage amounts for the Debtor's homes, each property is now profitable on a stand-alone rental basis.

Further, the Debtor's income now supplements the rental revenue for the benefit of her creditors.  Prior to the commencement of her case, the Debtor's personal revenue bridged the gap

between the losses she incurred on the rental of her homes and the related monthly mortgage payments.  As described in the Disclosure Statement, this will allow the Debtor to maintain a rental and repair reserve, which in turn will allow her to protect the collateral securing her lender's loans and make her plan payments.

Finally, the projections set forth in the Disclosure Statement were prepared based upon reasonable assumptions and represent a fair portrayal of the Debtor's likely future managing her homes.  As such, the Debtor demonstrates an ability to make all payments required pursuant to the Plan and has done so since the outset of this case.  Accordingly, the confirmation of the Plan is not likely to be followed by the liquidation or the need for further reorganization of the Debtor and, thus, satisfies the feasibility requirements of section 1129(a)(11) of the Bankruptcy Code.

**12.      Section 1129(a)(12) is Satisfied Because the Plan Provides for the Payment of all Statutory Fees**

Section 1129(a)(12) requires the payment of "[a]ll fees payable under section 1930 [of title 28, United States Code], as determined by the court at the hearing on confirmation of the plan." 11 U.S.C. § 1129(a)(12).  Section 507 of the Bankruptcy Code provides that "any fees and charges assessed against the estate under [section 1930 of] chapter 123 of title 28" are afforded priority as administrative expenses. 11 U.S.C. § 507(a)(1).  In accordance with sections 507 and 1129(a)(12) of the Bankruptcy Code, the Plan provides that all such fees and charges payable will be paid pursuant to the Plan.  After confirmation and until these cases are closed, converted, or dismissed, the Plan provides for the payment by the Disbursement Agent of all such fees as they become due and payable. See Plan, § 5.02.  Thus, the Plan satisfies the requirements of section 1129(a)(12).

### 13.    Section 1129(a)(15)(B) is Satisfied Because the Plan Provides For The Payment of the Debtor's Projected Disposable Income

As set forth in the Disclosure Statement and section 5.01 of the Plan, the Debtor will make 60 monthly payments of $2,500.00 during the 5-year period beginning on the date that the first payment is due under her Plan. The Debtor's income is based on (i) her regular salary as a nurse and (ii) the profit she now earns on the management of her rental properties.  Moreover, the Debtor does not maintain a lavish lifestyle, and after paying for costs such as property insurance, taxes, home owner's association dues, sewage fees and similar costs related to the maintenance of her properties, the Debtor plans to pay $150,000.00 to her unsecured creditors over 5 years.

Indeed, taking the Debtor's net monthly base salary of approximately $4,200.00 and her monthly expenses of $4,040.00, if she were to abandon her properties, her projected disposable income is only $160.00 per month.  <u>See</u> Disclosure Statement, Exhibit E.  Nevertheless, the Debtor proposes to pay $2,500.00 per month, which is based on her willingness to work overtime and the expected profits from her rental properties, which is her disposable income.  As such, the Plan satisfies the requirements of section 1129(a)(15)(B) and should be confirmed.

## B. THE COURT SHOULD APPROVE THE PLAN

Pursuant to section 105(a) of the Bankruptcy Code, the Bankruptcy Court is empowered with general equity powers to "issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).  Further, section 1123(b) of the Bankruptcy Code states that a plan of reorganization may include any "appropriate provision not inconsistent with the applicable provisions of this title."  The Debtor's plan does not request any extraordinary relief and as such, the Plan complies with the applicable provisions

of the Bankruptcy Code and should be confirmed by the Court as in the best interests of the Debtor, her estate and her creditors.

## IV RESPONSE TO OBJECTIONS

The Debtor anticipates that each of the objections to confirmation of the Plan will be resolved consensually, however, the Debtor reserves the right to supplement this memorandum or otherwise respond at any time if, notwithstanding the Debtor's current expectations and understandings, there remains any unresolved objection to confirmation of the Plan. Nevertheless, the following are the Debtor's specific responses to the 2 objections to the Plan.

### A.  Response to the Objection of Aurora Loan Services, Inc.

The objection of Aurora Loan Services, Inc. ("**Aurora**") raises issues that should have been raised at the hearing of the Disclosure Statement, insomuch as they primarily center around the Debtor's disclosure of her income and expenses. Nevertheless, the Debtor will file a supplement to this response prior to confirmation which includes the evidence of her income and expenses.

Second, Aurora takes issue with the Debtor's vacancy rates.  As of the date hereof, only one of the Debtor's properties is vacant and the Debtor is actively seeking to rent her one vacant property.  In today's turbulent market, finding reliable tenants is more challenging than in the past.  Importantly, the city of Las Vegas is experiencing an extreme slowdown in population grown.  See *Las Vegas sees slowest growth rate in two decades*, Las Vegas Sun, March 19, 2009. As a result, rental rates (and in some cases tenants) are dropping.  Nevertheless, the Debtor has been making her monthly mortgage payments on time throughout the pendency of her case.

Accordingly, the Debtor's demonstrated ability to timely pay her mortgages proves her proposed Plan payments are anything but speculative.

Third, Aurora objects to the Debtor's valuation of her property located at 11733 Tierney Creek Drive, Las Vegas, Nevada ("**Tierney Creek**"), which is secured by Aurora's first lien. Specifically, Aurora argues that because the property is a rental and the appraisal of the property expressly excludes the income capitalization approach, the Debtor's valuation is inequitable. This argument, which is supported by no evidence, fails to account for the overwhelming effect of the foreclosure crisis.  In other words, regardless of what Aurora believes the rental value of Tierney Creek may be, it is unlikely any potential purchaser will pay more for the Debtor's property than comparable sales in the market.  Therefore, this equitable argument fails.

Last, Aurora points out that the Debtor has not filed her monthly operating reports of late. This is due in part to the fact that the Debtor was focused on providing the information necessary to complete her Disclosure Statement.   Nevertheless, this defect will be cured prior to confirmation.

**B.  Response to the Objection of Bank of America, N.A.**

The second objection to the Plan, filed by Bank of America, N.A. ("**BofA**"), raises 3 issues: (i) the valuation of BofA's lien against 8466 Illusionary Magic Circle ("**Illusionary Magic**") is understated by $15,000; (ii) the Debtor's proposed transfer of her properties to a Holding Company impairs BofA's Class 1 claim; and (iii) the Plan violates section 1129(a)(16) of the Bankruptcy Code by transferring BofA's security to the Holding Company.  Each of these arguments lacks sufficient merit to deny confirmation of the Plan.

First, BofA's estimated value for its Illusionary Magic lien is $370,000.00, versus the Debtor's estimated value of $355,000.00.  Importantly, BofA hinges its argument on a comparable sale for which it alleges that a sales concession of $11,000.00 should not be counted. As BofA well knows, a sales concession is an amount credited by a seller of property, at closing, to cover certain expenses the parties agree should be borne by the seller.  As a result, the net proceeds realized by the seller are reduced by the amount conceded, which in this case, is $11,000.00.  Taking the sales concession BofA acknowledges occurred, $370,000.00 minus $11,000.00 equals $359,000.00.  In other words, BofA's estimated value is roughly $4,000.00, or 1.1% more than the Debtor's estimate.  These are not differences sufficient enough to deny confirmation.

Second, BofA believes that the Debtor's proposed transfer of the title to Illusionary Magic to a Holding Company will impair its claim.  As set forth in section 5.03 of the Plan:

> On or after the effective date of the Plan, the Debtor shall transfer title to her properties to a Nevada limited liability company (the "**Holding Company**"), for liability purposes.  The transfer shall not limit the Debtor's personal liability to her Class 1 creditors or her obligations to make payments under this Plan.

Plan, § 5.03.  The Debtor's intent of using the Holding Company is to protect her secured creditors and herself from liability from personal injury or property damage during the pendency of her Plan.  In other words, the use of the Holding Company further protects BofA by shielding the Debtor personally, including her personal income.

Finally, BofA cites to section 1129(a)(16) of the Bankruptcy Code for the proposition that the Debtor's proposed transfer of her properties to the Holding Company is violates the Bankruptcy Code.  Although the Debtor is not a corporation or a trust, as set forth above, the

transfer of the Debtor's properties is intended to protect all parties-in-interest, not limit the Debtor's liability. Therefore, this objection should be overruled.

## V CONCLUSION

The Plan complies, or soon will comply, with and satisfies all of the requirements of section 1129 of the Bankruptcy Code and, thus, should be confirmed. Accordingly, the Debtor requests that the Court confirm the Plan pursuant to section 1129(b).

Dated this 22nd day of July 2009.

Respectfully Submitted,


/s/Samuel A. Schwartz_____
Samuel A. Schwartz, Esq.
Nevada Bar No. 10985
Nikoll Nikci, Esq.
Nevada Bar No. 10699
The Schwartz Law Firm, Inc.
626 South Third Street
Las Vegas, Nevada 89101
Telephone: (702) 385-5544
Facsimile: (702) 385-2741
Attorneys for the Debtor

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the attached pleading was sent via

REGULAR US MAIL on July 23, 2009, to the following:

US Trustee
Attention: Michal J. Bloom, Esq.
300 Las Vegas Blvd South
Suite 4300
Las Vegas, Nevada 89101

Barrett Daffin Frappier Treder & Weiss, LLP
Att. for Claim: EMC Mtg Corp. & Aurora Loan Serv.
917 S. Village Oaks Drive Suite 200
Covina, California 91724

Cassandra J. Richey, Esq.
California Bar No. 155721
Polk, Prober & Raphael, a Law Corporation
Re: Countrywide Home Loans Servicing, LP
20750 Ventura Boulevard, Suite 100
Woodland Hills, California 91364

Wilde Hansen, LLP
Attention: Kevin S. Soderstrom, Esq.
208 South Jones Blvd
Las Vegas, Nevada 89107

Corey M. Robertus
Moss Codilis, L.L.P.
Re: EMC Mortgage Corp. and Aurora Loan Servicing
6560 Greenwood Plaza Blvd.
Ste. 100
Englewood, Colorado 80111

Callister & Reynolds
Attention: Ronald H. Reynolds
823 Las Vegas Boulevard South
Las Vegas, NV 89101